474 P.2d 712

**Marie NOVAK, Plaintiff-Appellant,**

v.

**Red DOW and Albuquerque National Bank, Defendants-Appellees.**

**No. 498.**

Court of Appeals of New Mexico.

Sept. 4, 1970.

John B. Speer, Albuquerque, for appellant.

Peter J. Adang, Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, for appellee Albuquerque National Bank.

James A. Maloney, Atty. Gen., Ray Shollenbarger, Asst. Atty. Gen., Santa Fe, for appellee Red Dow.

## OPINION

WOOD, Judge.

Plaintiff's damage suit claimed Sheriff Dow wrongfully refused to conduct an execution sale and claimed the Albuquerque National Bank unlawfully obtained a delay in the scheduled sale. The Bank counterclaimed, asserting a right to possession of the car involved and asserting a security interest superior to the execution levy. The trial court granted summary judgment adverse to plaintiff on all

of the claims; plaintiff appeals. The issue is the propriety of the summary judgments. We affirm the summary judgment in favor of the Bank on plaintiff's damage claim. We reverse the other summary judgments.

### The claim against Dow.

Plaintiff's unverified complaint alleges that: plaintiff had an unsatisfied Small Claims Court judgment against Bowling; execution on this judgment was delivered to Deputy Sheriff Osterman in November, 1968; on January 7, 1969, "while the execution was in force," Osterman levied on a certain car; sale under the levy was advertised; the Small Claims Court stayed the sale and subsequently dissolved the order of stay; plaintiff requested Dow to have a deputy conduct the sale on the date to which it had been postponed; Dow refused to permit this and " * * * refused to assist in any way to conduct a sale of the car, * * *."

Dow's unverified answer denies, on information and belief, most of the allegations of the complaint. The answer does admit plaintiff's request to conduct the sale on the postponed date and Dow's refusal to assist in a sale of the car. The refusal was on the basis that " * * * the levy had not been made by his office." Whether the levy had been made by Dow's office, obviously, is a material issue on the question of Dow's alleged wrongful refusal to conduct the execution sale.

Dow moved for summary judgment on the basis of the pleadings and the affidavits filed of record. The pleadings, being unverified, do not lend support for or against the motion for summary judgment in this case. See Rekart v. Safeway Stores, Inc., 81 N.M. 491, 468 P.2d 892 (Ct. App.1970). Neither the affidavits filed on behalf of the Bank nor the affidavits by plaintiff's attorney go to the question of a levy by the Sheriff's office.

The only support for the motion is Sheriff Dow's affidavit. His affidavit does not assert that the levy was not made or that it was not made by Osterman. His affidavit does go to Osterman's authority to make the levy. The Sheriff states that " * * * Osterman was not a regularly full-time salaried deputy sheriff on the staff of the Sheriff's Department at the time of the alleged service of the execution * * *"; that Osterman " * * * did have a special deputy's commission, which gives the holder no authority to act in any capacity for the Sheriff's office; * * *"

Section 15–40–9, N.M.S.A.1953 (Repl.Vol. 3) gives the Sheriff authority to appoint deputies. Section 15–40–12, N.M.S.A.1953 (Repl. Vol. 3) recognizes there may be "regular" and "special" deputies. A classification of "special deputy" does not, however, establish a lack of authority to serve a writ of execution or make a levy pursuant to the writ. Section 15–40–12, supra, specifically refers to " * * * special deputies to serve any particular order, writ or process, * * *." The fact that Osterman may have been a "special deputy" does not establish an absence of authority, on his part, to levy on the car.

Section 15–40–11, N.M.S.A.1953 (Repl. Vol. 3) refers to the powers of deputy sheriffs. It states: "The said deputies are hereby authorized to discharge all the duties which belong to the office of sheriff, that may be placed under their charge by their principals, * * *." Thus, Deputy Sheriff Osterman had such authority as had been conferred upon him by Sheriff Dow. The extent of Osterman's authority was a question of fact.

Sheriff Dow's affidavit also states that: he took office on January 1, 1969; he had no personal knowledge of the execution; the records of the Sheriff's office do not show the execution; the execution was never sent or received by the Sheriff's office; and the execution was never served through his office. The affidavit also states that Osterman was not qualified to serve the execution.

The opposing affidavit of E. M. Stoll states that: the prior sheriff, Wilson, had

authorized Stoll and Osterman to levy executions; that they did so regularly; that executions were brought directly to Stoll and Osterman with Sheriff Wilson's knowledge and approval; immediately after midnight on January 1, 1969, Sheriff Dow issued new commissions to Stoll and Osterman; and a form of the new commission is attached. The commission form attached contains no limitation on the deputy's authority. Stoll states: " * * * Dow told me at that time that we were to continue operating as deputies as we had been doing under Joe Wilson. * * *"

Stoll's affidavit raises factual issues as to whether Sheriff Dow would have had knowledge of the execution, whether the records of his office would have shown the execution, whether the execution would have passed through his office, whether the execution was served under his authority and whether Osterman had authority to make the service. There being material fact issues, they must be resolved at trial. The summary judgment in favor of Sheriff Dow was improperly granted. Jacobson v. State Farm Mutual Automobile Insurance Company, 81 N.M. 600, 471 P.2d 170, decided June 22, 1970.

*The claim against the Bank.*

Plaintiff's damage claim against the Bank asserts: "The defendant bank unlawfully intervened * * * and unlawfully procured the order from the small claims court which delayed the scheduled sale of the car levied upon."

Although the summary judgment in favor of the Bank on this damage claim has been appealed, an issue raised by the briefs is whether an appeal, generally, from the summary judgment, sufficiently states a "point relied on" for purposes of review. See § 21–2–1(15) (11), N.M.S.A.1953 (Supp.1969). We assume that it does.

However, plaintiff presents neither arguments nor authorities in her brief in chief as to why the trial court erred in granting summary judgment on this damage claim. See § 21–2–1(15) (14), N.M. S.A.1953 (Supp.1969). We assume, but

do not decide, [see Sanchez v. Bernalillo County, 57 N.M. 217, 257 P.2d 909 (1953)], that arguments and authorities could be presented for the first time in the reply brief. The reply brief states: " * * * the district court's errors in giving the bank priority over the plaintiff are * * * good reasons for reversing the judgment in its entirety." This is the sum of the argument; no authorities are presented in support. As to this argument, it is not explained how the asserted error in priorities, which involves the Bank's counterclaim and the asserted levy by Osterman, affects or in any way pertains to a damage claim against the Bank for obtaining an order delaying the execution sale.

Plaintiff has the burden of clearly pointing out the asserted error of the trial court. Morris v. Merchant, 77 N.M. 411, 423 P.2d 606 (1967); Cochran v. Gordon, 77 N.M. 358, 423 P.2d 43 (1967). Plaintiff has not met that burden. Further, even though the propriety of the summary judgment in favor of the Bank is assumed to have been presented as a point relied on for reversal, the point is neither argued nor supported by authority. Therefore, it is considered as abandoned. Sproul Const. Co. v. St. Paul Fire & Marine Ins. Co., 74 N.M. 189, 392 P.2d 339 (1964); Gibbs v. Whelan, 56 N.M. 38, 239 P.2d 727 (1952). Accordingly, the summary judgment in favor of the Bank is affirmed.

*Summary judgment for the Bank on its counterclaim.*

In its counterclaim, the Bank alleged that: Bowling purchased the car, financing it by a loan from the Bank; the loan was secured by a security agreement covering the car; the security agreement was filed with the Motor Vehicle Department; and plaintiff had constructive notice of the Bank's lien. The Bank alleged: plaintiff obtained possession of the car pursuant to a writ of execution; the Bank's lien is a superior lien and the Bank is entitled to possession of the car; after de-

mand, plaintiff continued to wrongfully detain the vehicle.

The counterclaim asked that a writ of replevin be issued directing the Sheriff to seize the car from plaintiff and to deliver it to the Bank. The counterclaim also sought a judgment that the Bank was entitled to possession of the car "* * * exclusive of any rights of possession * * *" by plaintiff. An affidavit in replevin and a bond in replevin were filed. The writ of replevin was issued.

The summary judgment in favor of the Bank on the counterclaim states that the Bank is entitled to possession of the car and directs the Sheriff to deliver custody of the car to the Bank. Because of the contents of the summary judgment, two questions must be discussed in determining its propriety.

The first question concerns the writ of replevin. The counterclaim did not waive seizure and delivery of the property as authorized by § 22–17–7, N.M.S.A.1953. It alleged a right to immediate possession, a wrongful detention by plaintiff, and asked for recovery of the car. Section 22–17–1, N.M.S.A.1953. It proceeded on the basis that the car was not in the possession of an officer, see §§ 22–17–2 and 22–17–3, N.M.S.A.1953, but in plaintiff's possession.

Plaintiff asserts that the writ of replevin was never served. Contending to the contrary, the Bank relies on certificates of mailing signed by counsel. These certificates apply only to the counterclaim in which the writ of replevin was requested and copies of the affidavit and bond in replevin. There is nothing in the record showing that the writ was ever served or that the Bank obtained possession of the car pursuant to the writ. The only indication in the record is that the Bank did not obtain possession of the car pursuant to the writ—the summary judgment directs the Sheriff to deliver possession of the car to the Bank. Section 22–17–10, N.M. S.A.1953.

What results from the failure to serve the writ? Johnson v. Terry, 48 N.M. 253, 149 P.2d 795 (1944) states:

"Replevin, under this statute, [§ 22–17–1, supra] is a possessory action. The primary object of which is plaintiff's right to the immediate possession of the property and, secondarily the recovery of damages by the plaintiff for the unjust caption, or detention thereof. The only judgment that may be rendered, under the statute, in favor of the plaintiff, is for the possession of the property and damages for its unlawful caption or detention. The jurisdiction of the court, to hear and determine actions in replevin instituted pursuant to this statute, is dependent upon the issuance and service of the writ which brings under the control of the court the property for the purpose of rendering a judgment in accordance with the object and purpose of the statute, viz.: To determine the right to the immediate possession of the property, and damages for its unlawful caption or detention. * * *"

Troy Laundry Machinery Co. v. Carbon City Laundry Co., 27 N.M. 117, 196 P. 745 (1921); see Citizens Bank, Farmington v. Robinson Bros. Wrecking, 76 N.M. 408, 415 P.2d 538 (1966).

■■ Since seizure of the property under the writ of replevin is a requisite to the trial court's jurisdiction to determine the right to the possession of the car, Johnson v. Terry, supra, and since the record before us shows no such seizure, the trial court did not have jurisdiction to grant a summary judgment determining that the Bank had a right to possession of the car.

The second question concerns that portion of the counterclaim which asserts the Bank's lien is superior to plaintiff's claim under a levy pursuant to a writ of execution. This question assumes a valid levy by the Sheriff's office although we have held there is a factual issue concerning this levy in discussing plaintiff's claim against Sheriff Dow. This question is

concerned with priorities—whether the Bank's lien is superior to the levy under the writ of execution.

The priority of the Bank's lien involves §§ 64–5–1 and 64–5–2, N.M.S.A.1953 (Repl. Vol. 9, pt. 2, Supp.1969). These sections provide for the filing of security interests with the Motor Vehicle Department [formerly Motor Vehicle Division, § 64–2–1, N.M.S.A.1953 (Repl.Vol. 9, pt. 2, Supp. 1969)]. Section 64–5–2, supra, provides the filing of the application (for a new title showing the lien) with the Department and the issuance of a new certificate of title constitute constructive notice of all security interests in the vehicle described in the application. It provides that if the application is received within ten days after the date the security agreement was executed, constructive notice dates from the time of execution of the security agreement. " * * * Otherwise, constructive notice shall date from the time of receipt noted on the title application."

It is undisputed that the Bank's loan, the security agreement and the application for a title showing the Bank's lien were all executed on June 12, 1968. The Bank's affidavit states: " * * * A copy of the application for a title * * *" is Exhibit C to the affidavit. Section 64–5–1, supra, requires the Department to stamp on the application, the date it was received. The copy of Exhibit C in the record shows it was stamped, but the date cannot be read. The affidavit also states the security agreement was filed with the Motor Vehicle Department on June 12, 1968. On this basis, the Bank asserts its lien was valid, was superior to the asserted levy of January 7, 1969 and that its lien was constructive notice to plaintiff from June 12, 1968. As to the issue before us, the Bank asserts that its affidavit and exhibits were a prima facie showing of a right to summary judgment and that in the face of the Bank's showing, plaintiff has not shown that a material issue of fact existed. Spears v. Canon de Carnue Land Grant, 80 N.M. 766, 461 P.2d 415 (1969).

Plaintiff presents several contentions as to why the Bank had not made a prima facie showing entitling it to summary judgment. We need consider only one of them—the date the Motor Vehicle Department received the application for a new title. Under § 64–5–2, supra, constructive notice of the Bank's lien dates from the date the security agreement was executed if the application was received within ten days of June 12, 1968. Otherwise, constructive notice dates from the time of receipt noted on the application.

The Bank's affidavit states the security agreement was filed on June 12, 1968. It makes no such statement concerning the application. Further, the affidavit is silent as to the date the application was received by the Motor Vehicle Department. Constructive notice does not date from a filing of a security agreement even if it was proper to file the security agreement. Upon the filing of the application, constructive notice is tied directly to receipt of the application. Section 64–5–2, supra. The affidavit does not state when the application was received by the Motor Vehicle Department and, therefore, fails to make a prima facie showing that plaintiff was charged with constructive notice of the Bank's lien.

Exhibit C to the Bank's affidavit is stated to be a copy of the application. We have previously pointed out that the stamped date cannot be read. In addition, Exhibit C shows two inked notations. One is: "RD 1/14/69." The second is: "Jan 14–69 22093 * * * 19⁰⁰." These notations, unexplained, prevent a prima facie showing for summary judgment since they suggest that the application was received on January 14, 1969 and, therefore. subsequent to the execution levy. There is no explanation of the notations, therefore, the Bank failed to make a prima facie showing entitling it to summary judgment.

The Bank, however, would avoid any effect for the notations. It states: " * * * It might be pointed out that, whatever that handwriting means, it cer-

tainly was not put there by anyone at the Motor Vehicle Division. The exhibit * * * is an Extra Copy of the application that was sent to the Motor Vehicle Division * * * That copy never left the file of the Bank and the affidavit * * * establishes that it is only a copy of the actual application on file with the Motor Vehicle Division. * * * Any writing on the application was placed there by employees of the Bank and not anyone at the Motor Vehicle Division. * * *"

The foregoing contention contradicts the affidavit. The affidavit states that the exhibit, which contains the notations, is a copy of the application. If this is so, we have previously pointed out that the Bank failed to make a prima facie showing as to the priority of its lien. If, as asserted in the above quotation, the exhibit is a copy of the application retained by the Bank and the notations were not on the copy submitted to the Motor Vehicle Department, then there is nothing in the record showing when the Department received the application. If this is so, there is nothing on which to base constructive notice. Either way, there is no showing entitling the Bank to a summary judgment holding the Bank's lien to be superior to the execution levy.

There is no prima facie showing that the Bank's lien was superior to the execution levy. Spears v. Canon de Carnue Land Grant, supra. The trial court erred in granting summary judgment on the counterclaim.

The summary judgments in favor of Dow and in favor of the Bank on its counterclaim are reversed. The summary judgment in favor of the Bank on plaintiff's claim against the Bank is affirmed. The cause is remanded for further proceedings consistent with this opinion.

It is so ordered.

OMAN and HENDLEY, JJ., concur.