(564 P.2d 563)
No. 48,198

THOMAS R. OGLEVIE, Administrator of the Estate of Wilson Eugene Luther, Deceased, *Appellant*, v. MERLE STASSER, *Appellee*; FARMERS NATIONAL COMPANY, Omaha, Nebraska, *Appellee*; ROLAND S. BARCUME, and THE FIRST CHURCH OF CHRIST, SCIENTIST, Boston, Massachusetts, *Appellants*.

Opinion filed May 20, 1977.

*Thomas R. Oglevie* and *Linda S. Trigg*, of Oglevie & Warren, Chartered, of Goodland, for the appellant, Thomas R. Oglevie, administrator of the estate of Wilson Eugene Luther, deceased.

*Sam W. G. Lowe*, of Lowe & Willoughby, of Colby, for the appellant, The First Church of Christ, Scientist.

*Thomas C. Boone*, of Hays, for Merle Stasser, appellee.

*Selby S. Soward*, of Zuspann, Soward & Burr, of Goodland, for Farmers National Company, Omaha, Nebraska, appellee.

Before HARMAN, C.J., ABBOTT and PARKS, JJ.

ABBOTT, J.: This is an appeal from a judgment of the district court decreeing specific performance of a written contract conveying Kansas real estate entered into by a California executor with a Kansas resident and quieting the title to said real estate in the appellee, Merle Stasser.

Wilson Eugene Luther, a nonresident of the state of Kansas, owned farm real estate in Sherman County, Kansas. He died testate, a resident of Orange County, California, on June 25, 1970.

The will and codicil of Wilson Eugene Luther were admitted to probate on July 31, 1970, in Orange County, California. Roland S. Barcume was named in the will as executor and ultimate trustee, and was duly appointed and qualified as executor on the same date.

At the time of his death, Wilson Eugene Luther owned real estate in Sherman County, Kansas, described as the north one-half (N½) of section twenty-three (23), township seven (7), range forty-one (41).

The will and codicil provided for trusts to be established for Bird B. Bates for life, and upon her death the remainder to appellant, The First Church of Christ, Scientist, Boston, Massachusetts. Barcume, as executor, had the power of sale under paragraph thirteen of the will, which read as follows: "I authorize my Executor or Executrix as the case may be to sell with or without public notice, at public or private sale, and to lease any property belonging to my Estate, subject only to such confirmation of Court as may be required by law."

During the lifetime of Wilson Eugene Luther, the farm real estate in Kansas was managed by Farmers National Company of Omaha, Nebraska. Barcume allowed Farmers National Company to continue managing the farm after Luther's death. Working through a distinguished Kansas lawyer, Barcume had the property appraised on December 2, 1970, by a local real estate agent. The land was appraised at $35,200. On July 18, 1972, Barcume gave an exclusive listing to Farmers National Company to sell the real estate. A contract to purchase the land was entered into by and between Merle Stasser and Roland S. Barcume on February 21, 1973, for the sum of $38,000. Stasser took possession of and has farmed the land since March 1, 1973.

Numerous efforts were made to get the necessary authenticated papers from California to start probate proceedings in Kansas and complete the transaction. Both parties to the contract desired and attempted to complete the transaction, but Barcume did not send the necessary authenticated paperwork despite numerous promises to do so. Finally, on July 31, 1973, the state of California suspended Barcume as executor and appointed the California public administrator to complete the administration of the estate. The requested documents were immediately forwarded to Kansas. A probate proceeding was commenced on August 7, 1973, and on August 31, 1973, Thomas R. Oglevie was appointed by the probate court of Sherman County, Kansas, as the administrator with the will annexed of the estate of Wilson Eugene Luther, deceased.

On September 20, 1973, the Kansas real estate was appraised by

three appraisers who set the value as of the date of death at $39,500.

During August and September of 1973, the price of wheat rose dramatically. Land that nourished wheat which once sold for $1.75 to $2.25 a bushel became more valuable as the price of wheat ultimately passed five dollars a bushel. This fact did not go unnoticed by the parties, and on October 9, 1973, the probate court ordered another appraisal of the farm real estate to ascertain its current value. Appraisers were appointed and appraised the property as of October 9, 1973, at $51,400.

On April 4, 1974, Thomas R. Oglevie, as administrator of the estate of Wilson Eugene Luther, deceased, filed this action ultimately seeking to quiet the title and requesting that Merle Stasser be treated as a tenant and be required to furnish an accounting as well as pay over to the estate the landlord's share (one-third) of the crops. Merle Stasser prayed for specific performance and that title be quieted in him. Issues were joined and the case tried.

The trial court decreed specific performance and ordered the Kansas administrator to deliver a deed, ordered payment of the realtor's commission to Farmers National Company, and quieted title in Merle Stasser contingent upon payment of all funds due the estate. Appellants, Thomas R. Oglevie, administrator of the estate of Wilson Eugene Luther, deceased, and First Church of Christ, Scientist, appealed from this judgment.

Two points are raised on appeal:

"(1) A Contract by a foreign executor to sell Kansas real estate titled in the name of a nonresident decedent is void by the foreign executor's total failure to comply with the Kansas Probate Code.

"(2) A contract purchaser of Kansas real estate has notice of a foreign executor's improper conduct when no probate proceedings have been filed in Kansas and title to the real estate is in the name of the nonresident decedent."

Appellants' second point has no bearing on our decision in this case. None of the parties contend that Stasser is "an innocent purchaser." Stasser knew that Barcume was a foreign executor and that no probate proceedings had been commenced in Sherman County, Kansas. If the contract is binding on the Kansas administrator, the fact that vendee had actual or constructive notice that probate proceedings had not commenced on the estate in Kansas would not in itself cause the contract to be void. If the

contract is not binding on the Kansas administrator, the second point appellants raise is immaterial.

The trial court cited 2 Bartlett, Kansas Probate Law & Practice, sec. 860, as precedent to allow the foreign executor to contract to sell the Kansas real estate. Section 860 provides:

"A testator may by his will give to his executor power to sell his property, and when such power is given the executor may proceed to sell the realty without recourse to the courts for a license. There can be no question that such power can be granted by a testator. The powers of an executor are those which are conferred upon him by the will and do not necessarily depend upon the action of the probate court. The probate court determines the authenticity of the will, but the executor derives his power, not from the court, but from the testator. There is, of course, the necessity of probating the will, and the necessity of formal appointment, qualification, and notice in conformity with the statute.

"When all this is done, and the testator has lawfully conferred upon his executor the power to sell real estate without formal sanction of the probate court, the power is absolute although the executor may in fact consult that court and keep it informed of his acts, and that court approve his reports as made from time to time during the period of his executorship. Where executors are given a general power of sale they may sell at their discretion, as prudence may dictate, during the continuance of the trust, and are not limited to a sale for purposes of administration. The power contained in the will should be given a liberal construction in order to carry into effect the true purpose of the testator. This power of the executor should never be captiously drawn into question. That would handicap the efficient discharge of his trust. Prospective buyers would fear to deal with him, and consequently the estate in his hands would suffer. And so the general rule is that purchasers are not bound to inquire into his powers; they may deal with him in full confidence. If the executor transcends his powers, he is responsible to heirs, devisees, and creditors, but the vendees cannot be affected unless they have notice of the executor's improper conduct. Whether the will creates a power in the executor to sell and convey real property is a question of interpretation to be decided from the language of the instrument. Power to sell real property may be conferred on executors by will, without using technical legal phraseology. When so conferred, application to the probate court for an order of sale is not necessary." (pp. 377-9.)

Section 860 of Bartlett and the authorities cited therein applies only to Kansas executors who have been appointed and qualified to act by the appropriate Kansas probate court (now a district court). Section 860 of Bartlett was never intended to apply to foreign executors.

Appellees would have us follow *Niquette v. Green*, 81 Kan. 569, 106 Pac. 270, in which the Supreme Court said:

"A foreign executor with testamentary power to sell and convey land in this state may make a valid contract to convey before the will has been admitted to

record in this state. All that section 2953 of the General Statutes of 1901, which governs the matter, requires is that the will shall be of record at the time of conveyance." (Syl. 4.)

The *Niquette* case is distinguishable on the facts in that it involved section 2953 of the 1901 Kansas statutes. That statute specifically authorized a legally qualified foreign executor with power granted in the will to sell real estate located in Kansas by recording a copy of the will in the county in which was situated the land so conveyed. The statute was repealed and no comparable statute exists today.

Although *Niquette*, supra, does not control this case, and the ultimate beneficiary is a church and not minors, the reasoning of Justice Burch in *Niquette* is very persuasively set forth as follows:

"Finally it is said that because this land has greatly increased in value and some of the beneficiaries of the will are minors the contract ought not to be specifically enforced. It is true that sometimes collateral circumstances arising after the formation of a contract may bring new factors into the relations of the parties so that hardship would follow its enforcement, and in such cases equity may decline to compel performance by one not himself at fault. But the rise or fall of fluctuating markets works no hardship in an equitable sense. The fate of fair and just contracts freely made by competent parties can not in conscience be left to depend upon such fortuities. (See note to *Banaghan v. Malaney*, 200 Mass. 46, in 128 Am. St. Rep. 378, 413.) And certainly a vendor who wrongfully delays fulfilling his just obligation until the market turns and the land rises in value has no standing in equity to deprive the vendee of the fruits of the bargain. To allow him to do so would be to approve misconduct as a source of gain, and equity can not thus be turned into an instrument of fraud, even for the sake of minors who may be remotely interested." (p. 584.)

It is a well-established rule that the judgment of a trial court will be upheld if it is correct, even though the court may have assigned an erroneous reason for its decision when the determinative facts are undisputed (*Highland Lumber Co., Inc. v. Knudson*, 219 Kan. 366, 548 P.2d 719; *Yellow Freight System, Inc., v. Kansas Commission on Civil Rights*, 214 Kan. 120, 124, 519 P.2d 1092).

Appellants argue that the real estate contract is void. Appellants reason that a nonresident decedent's estate is treated in the same manner as a resident estate; that no will is effective to pass real or personal property unless it shall have been duly admitted to probate (K.S.A. 59-616); and that K.S.A. 59-704 denies an executor the power to dispose of any part of the estate except to pay funeral expenses until letters testamentary are granted. Although not cited by counsel, we are not unmindful of K.S.A. 59-1413.

It is true the Kansas probate code has greatly restricted the authority of foreign representatives to function in Kansas until they have qualified under Kansas probate procedure. The principal purpose of the restrictions is to protect Kansas creditors, to insure the orderly distribution of the estate, and to provide a record so that marketable title to Kansas real estate is documented. The statutes cited by appellants do not contemplate the set of facts we are called upon to decide.

The power to sell under a will is not derived from the probate court, but rather from the will. In *Bank v. Grisham*, 105 Kan. 460, 185 Pac. 54, our Supreme Court said:

"It is difficult to see how more simple and explicit language could have been employed to express the testator's purpose to clothe the executrix with the power which these appellants dispute; and there can be no question that such power can be granted by a testator. The powers of an executor are those which are conferred upon him by the will and do not necessarily depend upon the action of the probate court. The probate court determines the authenticity of the will, but the executor derives his power, not from the court, but from the testator. (Note, 78 Am. St. Rep. 171; 11 R. C. L. 128.) We are not at present discussing the necessity of probating the will, nor the necessity of formal appointment, qualification and notice in conformity with the statute. All that was done by the Miller executrix. We merely hold that the testator, George J. Miller, lawfully conferred upon his executrix the power to sell real estate without formal sanction of the probate court (Gen. Stat. 1915, sec. 4621), although she did, in fact, consult that court and keep it informed of her doings, and that court approved her reports as made from time to time during the years of her executorship." (p. 470.)

The testator gave Barcume the power to sell the real estate and Barcume was at all times material duly appointed and qualified as executor of the estate of Wilson Eugene Luther. Barcume was the only person involved with the estate of Wilson Eugene Luther in California who had authority and the duty to employ someone in Kansas to open an estate in Kansas. Oglevie was retained by Barcume to act as the attorney in Kansas concerning the real estate sale and required probate proceedings. Oglevie had contact with Stasser and assured Stasser he would do everything that he could do in Kansas to expedite the sale. That same assurance was given by Oglevie to the judge of the superior court of Orange County, California.

Under the facts and in the absence of a specific statutory prohibition against so doing, this court adopts the theory of "relation back" to the limited extent set forth hereinafter.

The doctrine of "relation back" is an ancient one. It is mentioned as much as five hundred years ago (in the Year Book 18 Hen. VI. 22, pt. 7). The doctrine has been criticized, and many jurisdictions recognize the doctrine only to the limited extent necessary to avoid injustice.

Here, the person who ultimately became the Kansas administrator and who was employed by the California executor for the sole purpose of completing the sale gave assurances that the sale would be completed. The contract was signed by the duly qualified California executor who had power to sell the real estate under the will which has been admitted to probate and which has not been contested. Appellee Stasser was given possession of the real estate and he was allowed to sow and harvest crops. The rights of third parties are not involved. No one asserts fraud or that the sale price was less than the fair market value at the time the contract was signed. The contract was beneficial to the estate at the time it was entered into. The vendor wrongfully delayed fulfilling the obligation of completing the transaction for over one year until the market rose. The administrator with the will annexed, when duly qualified, could sign the deed and complete the sale since the will did not provide that the power to sell should not be so exercised (K.S.A. 59-1413). The rights of Kansas creditors are protected because all payments must be made through the Kansas administrator.

No valid reason exists for not applying a limited relation back doctrine. When, as in this case, the will of a nonresident decedent has been admitted to probate outside the state of Kansas and the person named in the will as executor with power of sale has been appointed, and the executor enters into a contract to sell real estate located in Kansas prior to the appointment of an administrator with the will annexed, this court will apply the doctrine of relation back to prevent an injustice if the contract is beneficial to the estate at the time it is entered into, is free of fraud, and the rights of third parties are not involved. (3 A.L.R.3d 1225; 26 A.L.R. 1349; 21 Am.Jur., Executors and Administrators, Sec. 848; 33 C.J.S., Executors & Administrators, Sec. 151 b; 34 C.J.S., Executors & Administrators, Sec. 1001 e; *Arledge v. Ellison*, 247 Ala. 190, 23 So.2d 389, 391 [1945]; *Jasper v. Batt*, 76 Ariz. 328, 264 P.2d 409, 413 [1953]; *Estate of Machado*, 186 Cal. 246, 250, 199 Pac. 505 [1921]; *Penn v. Whidden*, 42 A.2d 136, 137 [D. C.

1945]; *Griffin v. Workman,* 73 So. 2d 844, 846 [Fla. 1954]; *Hudmon v. Thomasson,* 74 Ga.App. 31, 38 S.E.2d 683, 685 [1946]; *Panke v. Louisville Trust Co.,* 303 Ky. 579, 198 S.W.2d 313, 315 [1946]; *Scott v. Lumber Co.,* 144 N.C. 44, 56 S.E. 548 [1907]; *Barrett v. Steele,* 189 Okla. 501, 117 P.2d 1020, 1022 [1941].)

When the doctrine of relation back applies, as in this case, it is necessary that the will be proved and recorded in the county where the land is situated, and when the will is so admitted after the date of the conveyance, it will relate back and render the contract valid. It is important to note that those who deal with an out of state executor under circumstances set forth in this opinion do so at their peril that the transaction is free of fraud, is beneficial to the estate when entered into, and that the rights of third parties have not intervened.

Affirmed.