833 P.2d 1199

Dorothy B. ALLEN, Plaintiff–Appellant,

v.

AMOCO PRODUCTION COMPANY, et al., Defendants–Appellees,

Jack D. ALLEN, et al., Third–Party Plaintiffs–Appellees,

v.

OSBORN AND DOROTHY ALLEN FAMILY TRUST, et al., Third–Party Defendants–Appellants.

No. 12053.

Court of Appeals of New Mexico.

May 19, 1992.

Thomas J. Hynes, Hynes & Hale, Farmington, for plaintiff-appellant.

James B. Payne, Tansey, Rosebrough, Gerding & Strother, P.C., Farmington, for defendants-appellees.

## OPINION

CHAVEZ, Judge.

This appeal arises from the dismissal of plaintiff's suit to quiet title and the entry of an order granting summary judgment in favor of third-party plaintiffs pursuant to their counterclaim and third-party com-

plaint. Plaintiff, surviving spouse of a personal representative appointed to administer the will of a deceased Colorado resident, sought to quiet title to an undivided one-half interest in the mineral rights located in San Juan County, New Mexico. Defendant, Amoco Production Company, not a party to this appeal, has retained royalties obtained from the exploitation of those rights, holding them for payment to the party eventually prevailing in this matter. The other defendants are heirs under the Colorado will. Some of them sought affirmative relief in the form of quiet title in their favor to the one-half interest in the mineral rights. The trial court granted defendants' motion for summary judgment. We affirm.

## FACTS

In 1972, James E. Allen (decedent) conveyed the San Juan County property to a third party but retained one-half interest in the mineral rights to that parcel. He died in Durango, Colorado, leaving a will devising all his estate to his relatives, including one of his sons, Osborn Allen, and appointing Osborn Allen executor. The will additionally granted the executor the power to settle the estate in part by disposing of the estate's real property. After a Colorado court formally appointed Osborn Allen executor, he borrowed money and purchased for himself and his spouse the one-half interest in the San Juan County mineral rights plus the remaining interest in the contract with the third party, on which it was still paying. The executor's deed was issued on July 18, 1974, but was not recorded until April 3, 1977. Plaintiff's husband died shortly after executing the deed. The personal representative appointed to administer decedent's estate in Colorado did not initiate ancillary probate proceedings in New Mexico or comply with any of the provisions of NMSA 1953, Chapter 31, article 2.

After plaintiff filed her suit to quiet title in New Mexico, other heirs of decedent filed a counterclaim, cross-claim and third-party complaint in the district court requesting that (1) ancillary estate proceedings be opened in New Mexico, and (2) that title to decedent's mineral rights be quieted in the name of counterclaimants and third-party plaintiffs. In granting the summary judgment, the trial court admitted the will to probate in San Juan County.

## DISCUSSION

The issue in this case is whether the power to convey that decedent granted the executor in the will legitimizes the mineral rights sale in New Mexico although there was never an ancillary probate proceeding here. Plaintiff makes clear that she relies on the power to sell in decedent's will, not the Colorado probate appointment of Osborn Allen as executor. Because this is the extent of the argument in plaintiff's brief, we discuss nothing more. Plaintiff does not assert on appeal, nor did she argue to the court below, that even if the executor's deed upon which she relies to establish her title to the New Mexico property was void, it nevertheless constituted colorable title permitting her to claim title by adverse possession. *Cf. Romero v. Garcia*, 89 N.M. 1, 546 P.2d 66 (1976) (void deed held sufficient for purpose of establishing color of title in suit to quiet title by adverse possession).

The first theory that plaintiff advances in support of her claim that the executor's deed issued in Colorado was valid, is that this state has adopted legislation recognizing an executor's power to sell real property of an estate when a will authorizes such a power to sell. *See* NMSA 1953, Section 31–5–5; *see also* NMSA 1978, § 45–3–711 (Repl.Pamp.1989). She also states that there is statutory authority proclaiming all real estate transactions of an executor to be "good and valid" sales. *See* NMSA 1953, § 31–7–9. From this statutory authority, she states that by virtue of the will itself the executor's transfer of the mineral rights to himself and plaintiff was also "good and valid."

Defendants and third-party plaintiffs do not dispute that the power to sell is a valid

provision of decedent's will. They also agree that in the usual case, the sale of real estate to settle an estate is "good and valid." However, defendants argue that the probate statutory scheme that applies to the subject will renders inapplicable the validating statutes we described in the preceding paragraphs. We agree.

Two points form the foundation of defendants' argument. First, defendants state that the provision granting the executor the power to sell obtains its vitality from probate. Defendants argue that the power of sale contained in decedent's will does not permit a domiciliary executor appointed in Colorado to dispose of an interest in realty situate in New Mexico unless ancillary probate proceedings are commenced in this state. Defendants also assert that if a will has independent vitality apart from probate, the provisions of this state's Uniform Probate Code and the protection extended to creditors are rendered meaningless. We agree. The executor's power is derivative of the effect a trial court gives a will by probating it. The law of New Mexico, prior to the adoption of the Uniform Probate Code, provides no direct guidance on this question. *But see generally* 3 William J. Bowe & Douglas J. Parker, *Page on the Law of Wills* §§ 28.4, 28.12 (rev. treatise 1961) (probate within state of real estate situs must occur to validate transfer of title by executor of foreign will). Defendants persuasively state, however, that if a will has independent vitality apart from probate, much of the Uniform Probate Code would be useless. For instance, the legislature devoted an entire chapter to ancillary probate. This includes provisions requiring the foreign executor to obtain a bond, receive ancillary letters testamentary, and be subject to suit and service of process. *See* NMSA 1953, §§ 31–2–1 to –9; *see also* NMSA 1978, §§ 45–4–101 to –303 (Repl.Pamp.1989). If a will was effective even absent probate, then there would have been no need for the legislature to have enacted the ancillary probate provisions.

We cannot construe statutes so as to impute the legislature with useless acts. *See Consolidated Freightways, Inc. v. Subsequent Injury Fund*, 110 N.M. 201, 793 P.2d 1354 (Ct.App.1990). The legislature enacted the ancillary probate system for a reason. That reason is patently to provide a way to assure that a will is valid and that an executor proceeds according to law. Plaintiff cites to cases from other jurisdictions suggesting that property transactions by a foreign executor are legitimate even without probate. *See Oglevie v. Stasser*, 1 Kan.App.2d 315, 564 P.2d 563 (1977); *Adams v. Duncan*, 147 Tex. 332, 215 S.W.2d 599 (1948). Defendants accurately distinguish these cases as involving some invocation of process in the state where the real estate was located. This process legitimized the will, and related back to the time of the property transaction to legitimize it as well. These cases demonstrate that ancillary probate is always necessary for the protection of devisees and third parties from executors who do not act according to law. *Id.; see generally* 31 Am.Jur.2d, *Executors and Administrators* § 1204 (1989). To protect defendants' rights as devisees under the will, the executor had a duty to initiate ancillary probate proceedings in San Juan County. He did not. His power to sell real estate was never effective there. Each state retains the power to control the law governing its land titles. *See Price v. Johnson*, 78 N.M. 123, 428 P.2d 978 (1967).

In 1975 the New Mexico Legislature enacted a comprehensive revision of this state's Uniform Probate Code. *See* 1975 N.M. Laws, ch. 257. In adopting NMSA 1978, Section 45–4–203 (Repl.Pamp.1989) of the Uniform Probate Code, our legislature materially revised this state's laws relating to probate and ancillary estate proceedings. With the adoption of the current Uniform Probate Code, our legislature modified the requirement necessitating the filing of ancillary probate proceedings in order to validate conveyances by personal representatives appointed in another state of a decedent's interest on realty located in New Mexico.

■ Plaintiff does not argue that the executor's deed purporting to convey decedent's interest in the mineral rights was governed by the current Uniform Probate Code. NMSA 1978, Section 45–4–204 (Repl.Pamp.1989) of the Uniform Probate Code grants statutory authority if "no local administration or application or petition therefor is pending in New Mexico" for a domiciliary executor appointed in another state to take charge of and dispose of assets, including land located in this state, subject to compliance with the provisions of Section 45–4–204. As specified by 1975 New Mexico Laws, Chapter 257, the effective date of the revised Uniform Probate Code was July 1, 1976, and the provisions of the current Code apply solely to the affairs of decedents who have died on or after July 1, 1976.

As shown by the record herein, the statutes controlling ancillary estate proceedings in New Mexico at the time of both the execution and recording of the deed in question were NMSA 1953, Sections 31–2–1 to –9. Since approval for the issuance of the executor's deed relied upon by plaintiff was not obtained from the court in New Mexico, the executor's deed was ineffective to convey title to the property in question.

Defendants' second point in response to plaintiff's argument that the will has independent vitality is that, even if the general rule of relation back so provided, it would not apply here. As we stated, it appears defendants recognize that once a will has been probated, a probate court generally cannot supervise an executor's decision to sell part of the estate. *See Bull v. Bal*, 17 N.M. 466, 130 P. 251 (1913). Even assuming probate in this matter, defendants argue that there was evidence of fraud or other inequity in this case so that the probate cannot relate back to the property transaction.

■ We will not reach that question. The trial court probated the will, but plaintiff did not argue this point to the trial court, nor did the plaintiff seek a ruling from the trial court as to whether that probate ought to relate back and legitimize the executor's transaction. We cannot rule on a point of law without a fair presentation of it to the trial court. *See* SCRA 1986, 12–216(A); *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 745 P.2d 717 (Ct.App.1987). Also, as plaintiff relies solely on the vitality of the will and not its probate, she has waived review of the effect of the probate in San Juan County by not briefing the issue. *Cf. State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985) (if a party fails to brief an issue that party waives review of it).

Even if we were to assume this issue was preserved, the facts here do not aide plaintiff. The general rule relating to the authority of a foreign executor to convey an interest in realty in another state is set forth in 31 Am.Jur.2d, *supra*, Section 1204, as follows:

> Absent a statute in the state where the land is situated, the domiciliary representative may not sell land in another jurisdiction for payment of the decedent's debts, at least without permission of the local court.

> But he may sell under a testamentary power, although he is treated for this purpose as the donee of a power, and not one acting under authority conferred by the court. And if he has a power of sale and enters into a contract to sell real property in another jurisdiction before the appointment of an ancillary representative, the court will apply the doctrine of relation back so as to validate the contract, if it was free of fraud and beneficial to the estate at the time it was made, and the rights of third parties are not involved. [Footnotes omitted.]

■ Here, the doctrine of relation back is not applicable because, in the absence of a statute authorizing a foreign executor to convey a decedent's interest in realty located in New Mexico, such conveyance was invalid. The subsequent initiation of ancillary proceedings in this state did not relate back to validate the deed issued by the

domiciliary executor because the doctrine of relation back presupposes that the ancillary executor is the same person who originally conveyed the property and that the personal representative desires to ratify the earlier conveyance. *See generally* J.F. Rystrom, Annotation, *Relation Back of Letters Testamentary or of Administration as Validating Prior Sales of Decedent's Property*, 2 A.L.R.3d 1105 (1965). Here, the ancillary executor appointed by the New Mexico court was not the same person as the domiciliary executor and vigorously opposed ratification of the executor's deed.

■ Plaintiff stresses that summary judgment is a drastic remedy that is inappropriate when there are triable issues. We agree. *See Koenig v. Perez*, 104 N.M. 664, 726 P.2d 341 (1986). Here, defendants came forward with evidence that there was no ancillary probate of the will in San Juan County. There is no dispute of that fact in the record, so it was not a genuine issue to be tried. Defendants met their burden as summary judgment movants of coming forward with evidence, and are thus entitled to summary judgment.

In sum, the only issue before us is the vitality of the will independent of any probate action. Defendants have successfully demonstrated that plaintiff's arguments are unpersuasive. Plaintiff did not carry her burden as appellant of clearly demonstrating that the trial court committed error. *See Novak v. Dow*, 82 N.M. 30, 474 P.2d 712 (Ct.App.1970). Absent a showing that plaintiff's spouse in his capacity as personal representative of decedent's estate complied with the provisions of Sections 45–4–201 to –207, the deed upon which plaintiff claims title to the mineral rights in question was void. We affirm.

IT IS SO ORDERED.

DONNELLY and FLORES, JJ., concur.