568 P.2d 214

Calvin HOWELL, as Next Friend of
Patrick Howell, a minor,
Plaintiff-Appellant,

and

City of Albuquerque, Cross-Claimant
Defendant-Appellant,

v.

W. E. BURK, Jr., PPG Industries, Inc.,
and Universal Constructors, Inc.,
Defendants-Appellees.

No. 2801.

Court of Appeals of New Mexico.

July 19, 1977.

Writ of Certiorari Denied Aug. 23, 1977.

Stephen F. Lawless, McCulloch, Grisham & Lawless, P. A., Albuquerque, for plaintiff-appellant Howell.

D. James Sorenson, Johnson, Paulantis & Lanphere, Albuquerque, for cross-claimant defendant-appellant City of Albuquerque.

Stephen Durkovich, Peter C. Mallory, Jasper & Durkovich, Albuquerque, for appellee W. E. Burk, Jr.

Lawrence H. Hill, Civerolo, Hansen & Wolf, P. A., Albuquerque, for appellee PPG Industries.

Thomas L. Johnson, Kenneth L. Harrigan, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for appellee Universal Constructors, Inc.

## OPINION

WOOD, Chief Judge.

These appeals involve the constitutionality of § 23–1–26, N.M.S.A.1953 (Supp.1975) and the applicability of that statute to the contentions in this case. We discuss: (1) title of the act; (2) special legislation and equal protection; (3) due process; and (4) application of the statute to the contentions of the parties.

The terminal building of the Albuquerque Airport was substantially completed on November 12, 1965. Patrick Howell, seven years of age, collided with a glass door or window on the observation deck of the building while walking between sections of the observation deck. The incident occurred on January 1, 1976. Suit for damages based on personal injuries was filed on July 14, 1976. The defendants are the City of Albuquerque, owner of the building; Universal (Universal Constructors, Inc.), the contractor who built the observation deck; Burk, the architect who designed the observation deck; and PPG (PPG Industries, Inc.) who manufactured and sold the glass, and, from the showing in this record, also installed the glass.

Albuquerque cross-claimed against Universal, Burk and PPG. Universal cross-claimed against Albuquerque and PPG. Burk cross-claimed against Albuquerque. PPG did not cross-claim.

All defendants, except Albuquerque, moved for summary judgment on the complaint and the cross-claims. The trial court's rulings on these motions are the basis for these appeals, all of which are interlocutory. The trial court ruled that § 23–1–26, supra, was constitutional. The trial court granted some, but not all, of the motions for summary judgment, applying the ten-year limitation period of § 23–1–26, supra.

Section 23–1–26, supra, reads:

"*Construction projects—Limitation on actions for defective or unsafe conditions.*—No action to recover damages for any injury to property, real or personal, or for injury to the person, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of a physical improvement to real property, nor any action for contribution or indemnity for damages so sustained, against any person performing or furnishing the construction or the design, planning, supervision, inspection or administration of construction of such improvement to real property, and on account of such activity, shall be brought after ten [10] years from the date of substantial completion of such improvement; provided this limitation shall not apply to any action based on a contract, warranty or guarantee which contains express terms inconsistent herewith. The date of substantial completion shall mean the date when construction is sufficiently completed so that the owner can occupy or use the improvement for the purpose for which it was intended, or the date on which the owner does so occupy or use the improvement, or the date established by the contractor as the date of substan-

tial completion, whichever date occurs last."

*Title of the Act*

 N.M.Const., Art. IV, § 16 states in part:

"The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed except general appropriation bills and bills for the codification or revision of the laws; but if any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void."

Plaintiff contends that the subject of § 23–1–26, supra, was not clearly expressed in the title. The title reads:

"RELATING TO CONSTRUCTION PROJECTS; AND PROVIDING FOR A LIMITATION ON ACTIONS FOR DEFECTIVE OR UNSAFE CONDITIONS ON CONSTRUCTION PROJECTS."

The legal test is whether the title fairly gives reasonable notice of the subject matter of the statute. *Martinez v. Jaramillo,* 86 N.M. 506, 525 P.2d 866 (1974); *Bureau of Revenue v. Dale F. Bellamah Corporation,* 82 N.M. 13, 474 P.2d 499 (1970).

Plaintiff asserts that reasonable notice of the subject matter is not given in the title. Section 23–1–26, supra, states that no action shall be brought after ten years from the date of substantial completion. By its terms, the statute provides that after the specified time has elapsed there is no cause of action. *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972). Plaintiff asserts that a no action statute is not a statute of limitations. Because the title refers to "limitation on actions", the contention is that the title fails to give reasonable notice of the subject matter. *Bagby Elevator and Electric Company, Inc. v. McBride,* 292 Ala. 191, 291 So.2d 306 (1974) so held. *Bagby* does not state New Mexico law.

"Subject" in N.M.Const., Art. IV, § 16 is to be given a broad and extended meaning so as to authorize the Legislature to include in one act all matters having a logical or natural connection. *State v. Romero,* 86 N.M. 99, 519 P.2d 1180 (Ct.App.1974). The no action provision in § 23–1–26, supra, literally is a limitation on actions that may be brought. The reference in the title to "limitation on actions" logically and naturally connects with the no action provision of the statute. The title provides reasonable notice of the subject matter and does not violate N.M.Const., Art. IV, § 16.

*Special Legislation and Equal Protection*

 N.M.Const. Art. IV, § 24 pertains to special legislation. Special laws are prohibited in the areas of special immunity and limitations on actions. This constitutional ban on special legislation does not prohibit legislation classifying the subjects or objects of legislation; almost every matter of public concern is divisible; such division is necessary to methodical legislation. *State v. Atchison, Topeka & Santa Fe Ry. Co.,* 20 N.M. 562, 151 P. 305 (1915).

 The question of special legislation involves the classification made by the Legislature. "If a statute is general in its application to a particular class of persons or things and to all of the class within like circumstances, it is a general law." On the other hand, if the statute applies to less than a class of persons, it is special legislation. *City of Raton v. Sproule,* 78 N.M. 138, 429 P.2d 336 (1967).

 Whether the classification in § 23–1–26, supra, is general or special involves the question of equal protection. *Gruschus v. Bureau of Revenue,* 74 N.M. 775, 399 P.2d 105 (1965) states:

"Equal protection does not prohibit classification for legislative purposes, provided that there is a rational and natural basis therefor, that it is based on a substantial difference between those to whom it does and those to whom it does not apply, and that it is so framed as to embrace equally all who may be in like circumstances and situations."

Thus, if there is no violation of equal protection in this case, § 23–1–26, supra, is not

special legislation. See *Davy v. McNeill,* 31 N.M. 7, 240 P. 482 (1925) where the two concepts are discussed jointly.

■ To answer the equal protection question we must consider the purpose of the statute. *McGeehan v. Bunch,* 88 N.M. 308, 540 P.2d 238 (1975).

The "no action" of § 23–1–26, supra, applies to actions "arising out of the defective or unsafe condition of a physical improvement to real property . . . ." It applies to actions "against any person performing or furnishing the construction or the design, planning, supervision, inspection or administration of construction of such improvement to real property, and on account of such activity . . . ." A general, but shorthand expression is that these statutory provisions refer to construction projects and builders. For convenience, we use this shorthand expression in the remainder of this first point.

The purpose of "no action" ten years after substantial completion of the construction project has a historical basis. The limited liability of the builder after the construction project has been completed and accepted by the owner was stated in *Wood v. Sloan,* 20 N.M. 127, 148 P. 507, L.R.A.1915E 766 (1915). In recent years, however, the liability of the builder has been expanded by judicial decision. This expansion appears in *Tipton v. Clower,* 67 N.M. 388, 356 P.2d 46 (1960); *Baker v. Fryar,* 77 N.M. 257, 421 P.2d 784 (1966); *Steinberg v. Coda Roberson Construction Co.,* 79 N.M. 123, 440 P.2d 798 (1968).

■ When did the builder become exposed to this expanded liability? The exposure came when the cause of action accrued. Section 23–1–1, N.M.S.A.1953. Generally, the cause of action does not accrue until injury occurs. *Peralta v. Martinez,* N.M., 564 P.2d 194 (Ct.App.1977). Since injury could occur years after the construction project had been completed, the builder was exposed to liability years after the action or event alleged to be the basis for requiring him to pay damages.

This increased exposure resulted from judicial decisions. Section 23–1–26, supra, is the legislative response. The Comment in XVIII Catholic U.L.Rev. 361 (1968–69), *Limitation of Action Statutes for Architects and Builders—Blueprints for Non-action,* states at 383–84:

"The legislative solution to these problems evidences a skepticism that the normal judicial process . . . adequately isolates the tenuous from the substantial claim; or that, even if just adjudication is possible, the burden of tenuous claims upon both court and defendant sufficiently vindicates the denial of a right of action altogether after a period of years."

The purpose of § 23–1–26, supra, was to provide a reasonable measure of protection against the increased hazard to builders. *Rosenberg v. Town of North Bergen,* supra; see *Nevada Lakeshore Co., Inc. v. Diamond Electric, Inc.,* 89 Nev. 293, 511 P.2d 113 (1973).

There is no contention that a classification providing for no action arising out of defective or unsafe conditions of physical improvements to real property is an improper classification. Compare *Josephs v. Burns,* 260 Or. 493, 491 P.2d 203 (1971). Thus, there is no equal protection claim based on classification of potential plaintiffs. In light of the historical background, any such claim would be meritless.

The improper classification claim goes to those who benefit from the no action provision. The beneficiaries are "any person performing or furnishing the construction or the design, planning, supervision, inspection or administration of construction of such improvement to real property, and on account of such activity . . . ." Under the statutory language, the owner or tenant of real property, or a materialman who does no more than manufacture or supply materials does not benefit from the statute. *Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970); *Skinner v. Anderson,* 38 Ill.2d 455, 231 N.E.2d 588 (1967); *Reeves v. Ille Electric Company,* 551 P.2d 647 (Mont. 1976).

The plaintiff, and Albuquerque, contend that owners, tenants and materialmen are in the same situation as those covered by the statute; that there is no substantial difference between owners, tenants and materialmen and those covered by the statute. This is the basis of the equal protection and special legislation claims. These claims are supported by three decisions. *Skinner v. Anderson,* supra, held a statute similar to the New Mexico statute was special legislation because there was no reasonable basis for distinguishing between architects and contractors (covered by the statute), and owners, tenants and materialmen (not covered by the statute). *Kallas Millwork Corporation v. Square D Co.,* 66 Wis.2d 382, 225 N.W.2d 454 (1975) and *Fujioka v. Kam,* 55 Haw. 7, 514 P.2d 568 (Hawaii 1973) follow *Skinner v. Anderson,* supra. We disagree with these decisions.

While both those covered and those not covered by the statute may be exposed to claims years after the construction project was completed, there is a difference in the problems of defending such claims. Architectural plans may have been discarded, copies of building codes in force at the time of construction may no longer be in existence, persons individually involved in the construction project may be deceased or may not be located. Due to the lapse of time, those persons covered by the statute may find it impossible to assert a reasonable defense.

Those covered by the statute have no control over the real estate improvement once it is completed and turned over to the owner. The owner or tenant may permit unsafe conditions to develop, or use the premises for a purpose for which it was not designed, or make defective alterations which may appear to be a part of the original construction. See *Grissom v. North American Aviation, Inc.,* 326 F.Supp. 465 (D.C.Fla.1971).

We have previously pointed out that § 23–1–26, supra, is a legislative response to the expanded liability imposed on those engaged in construction projects by judicial decisions. Liability of owners and occupiers of land has a different historical background. Such liability is not new. Compare the liability of the owner or occupier of land as stated in *Chavez v. Torlina,* 15 N.M. 53, 99 P. 690 (1909) with the liability of a contractor as stated in *Wood v. Sloan,* supra, which was decided six years later.

The difficulties of those covered by the statute in providing a reasonable defense to a claim made years after the construction project was completed, the absence of control of the premises by those covered by the statute, and the historical difference in liability between owners and occupiers of land and those covered by the statute provide a reasonable basis for excluding owners and tenants from the benefits of the statute.

There is also a reasonable basis for distinguishing between materialmen and persons covered by the statute. That reasonable basis lies in the work performed. "The manufacturer makes standard goods and develops standard processes. Defects are harder to find in the contractor's special jobs." 2 Harper and James, *The Law of Torts* (1956), page 1043. ". . . [T]he legislature could reasonably have concluded that evidentiary problems facing the architect and contractor are greater than those facing the materialmen." Comment, Catholic U.L.Rev., supra, at page 371.

We hold there is a reasonable basis for distinguishing between those covered by the statute and owners, tenants and materialmen. The legislative classification does not offend the equal protection requirement. Section 23–1–26, supra, is not special legislation. Apart from *Rosenberg v. Town of North Bergen,* supra, the following decisions provide little or no explanation for the result reached. Yet, the decisions accord with our view that there is no equal protection violation and that the statute is not special legislation. *Carter v. Hartenstein,* supra; *Regents of U. of Calif. v. Hartford Acc. & Indem. Co.,* 59 Cal.App.3d 675, 131 Cal.Rptr. 112 (1976); *Reeves v. Ille Electric Company,* supra; *Freezer Storage, Inc. v. Armstrong Cork Co.,* 341 A.2d 184, 234 Pa. Super. 441 (1975); *Good v. Christensen,* 527 P.2d 223 (Utah 1974); *Yakima Fruit & Cold*

*Stor. Co. v. Central Heat. & P. Co.,* 81 Wash.2d 528, 503 P.2d 108 (1972).

*Due Process*

■ Albuquerque's amended application for an interlocutory appeal asserted that § 23–1–26, supra, violated due process "in that it bars the appellant's causes of action before they have accrued." We have previously pointed out that under § 23–1–1, supra, plaintiff's claim accrued at the time of injury. Under § 23–1–8, N.M.S.A.1953, plaintiff would have had three years from January 1, 1976 in which to bring suit. However, § 23–1–26, supra, is "entirely unrelated to the accrual of any cause of action." *Rosenberg v. Town of North Bergen,* supra.

Section 23–1–26, supra, provides no action is to be brought ten years after substantial completion of the construction project. The ten years expired on November 12, 1975; the ten years expired prior to the date of injury. Thus, plaintiff's complaint is that he had no cause of action at the time of the injury and due process is violated because § 23–1–26, supra, deprives him of a cause of action.

We do not have a situation where a specific constitutional provision pertains to the preservation of remedies. Compare, *Josephs v. Burns,* supra, with *Saylor v. Hall,* 497 S.W.2d 218 (Ky.1973). Nor do we have a situation involving any vested right; plaintiff had no right to damages when § 23–1–26, supra, was enacted in 1967. See *Rubalcava v. Garst,* 53 N.M. 295, 206 P.2d 1154 (1949); compare N.M.Const., Art. IV, § 34.

The applicable rule is "that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." *Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). See *Smith v. Allen-Bradley Company,* 371 F.Supp. 698 (D.C.Va.1974); *Rosenberg v. Town of North Bergen,* supra; *Freezer Storage, Inc. v. Armstrong Cork Co.,* supra. The legislative purpose in enacting § 23–1–26, supra, was to provide a measure of protection against claims arising years after the construction was substantially completed. This is a permissible legislative object.

Inherent in the arguments of plaintiff and Albuquerque is the contention that § 23–1–26, supra, is unjust because it deprives an injured person of a remedy. It is not our function to question the social or economic policy which underlies the statute; our function is to determine whether it is unconstitutional. *McGeehan v. Bunch,* supra.

The trial court correctly ruled that § 23–1–26, supra, was constitutional.

*Application of the Statute*

■ 1. Section 23–1–10, N.M.S.A.1953 states that "[t]he times limited for the bringing of actions by the preceding provisions of this chapter shall, in favor of minors . . . be extended . . . ." Plaintiff asserts that this provision applies in favor of the minor in this case and that the ten-year provision in § 23–1–26, supra, is not applicable. We disagree. Section 23–1–26, supra, is not a part of "this chapter" referred to in § 23–1–10, supra. See also § 23–1–17, N.M.S.A.1953. *Noriega v. City of Albuquerque,* 86 N.M. 294, 523 P.2d 29 (Ct.App.1974) is contrary to plaintiff's contention.

2. The summary judgment went to all contentions raised in the complaint and the cross-claims "with the exception of the claims of negligent maintenance set forth in Paragraph XI of Count I and negligent failure to warn set forth in Paragraph XIII of Count I of the Plaintiffs' complaint, as well as the Crossclaims based upon such allegations." Paragraph XI alleged that all defendants had a duty to maintain the premises in a safe condition for invitees. Paragraph XIII alleged that all defendants failed to warn plaintiff of the location and danger of the glass.

The reason the negligent maintenance and negligent failure to warn claims were excepted from the summary judgment was "an insufficient record . . . to deter-

mine whether . . . [this claimed negligence] occurred after the substantial completion of the airport and within ten years of the date the Complaint was filed . . . .

Universal and Burk contend the trial court erred in exempting these claims from the summary judgment; no other party raises this claim. The showing in this record is that Universal and Burk were involved with the glass as the general contractor and architect. To the extent the claims of negligent maintenance and negligent failure to warn, whether in the complaint or by cross-claim, are asserted against Universal and Burk in their capacity as general contractor and architect in designing, planning or performing the construction, in supervising the construction or in administering the construction, the claims come within § 23–1–26, supra. We do not read the summary judgment as being contrary to this view.

However, the summary judgment states that the record is insufficient to determine whether the negligent maintenance and negligent failure to warn occurred after substantial completion and within ten years of the date the complaint was filed. This phraseology suggests that *when* the negligence occurred is of significance, and that the type of negligence is also of significance. Thus, Albuquerque contends that § 23–1–26, supra, applies only to negligence which occurred prior to substantial completion and that Universal had a duty to warn if it learned of the danger after the terminal building was constructed.

Section 23–1–26, supra, is not worded in terms of *when* the negligence occurred. It does not matter if the negligence occurred before there was substantial completion, during the ten years after substantial completion or more than ten years after substantial completion. The statute states that no action shall be brought ten years after the date of substantial completion.

Section 23–1–26, supra, is not worded in terms of type of negligence. It states that "no action" is to be brought ten years after the date of substantial completion "arising out of the defective or unsafe condition of a physical improvement to real property". The "no action" applies to any duty of Universal or Burk to warn, regardless of when Universal or Burk learned of the danger, if the duty to warn arose out of a defective or unsafe condition of the improvement to real property. Compare the claim of negligent failure to warn or repair rejected in *Josephs v. Burns,* supra.

To the extent that claims of negligent maintenance and negligent failure to warn are asserted against Universal and Burk, and those claims arise out of defective or unsafe conditions of the improvements designed and supervised by Burk and constructed by Universal, these claims should not have been exempted from the summary judgments granted Universal and Burk. The claims of negligent maintenance and negligent failure to warn which are asserted against Universal and Burk arise out of the alleged defective or unsafe condition of the glass and thus are based on alleged defective or unsafe condition of the improvement to real property. The trial court erred in exempting these claims from the summary judgment entered in favor of Universal and Burk.

3. Plaintiff and Albuquerque complain of the summary judgment in favor of PPG; their contentions involve two questions.

Plaintiff's complaint against PPG alleges strict liability, negligent design and implied warranty. Albuquerque's cross-claim against PPG alleges express and implied warranty. The first question is whether these bases for liability are covered by § 23–1–26, supra. We have previously pointed out that the "no action" of § 23–1–26, supra, does not distinguish between types of negligence. Nor does § 23–1–26, supra, exclude strict liability claims. The statute does refer to warranty claims; it states the ten-year limitation "shall not apply to any action based on a contract, warranty or guarantee which contains express terms inconsistent herewith." Neither plaintiff nor Albuquerque has demonstrated in this appeal that the warranties alleged

contain express terms inconsistent with § 23–1–26, supra. It was their obligation to do so. *Novak v. Dow,* 82 N.M. 30, 474 P.2d 712 (Ct.App.1970). There is no showing that the trial court's ruling on the bases for liability was error.

The complaint alleges that PPG manufactured, designed, sold and installed the glass. Albuquerque's cross-claim alleges that PPG manufactured, sold and installed the glass. The second question is whether these activities are covered by § 23–1–26, supra. In our discussion of the equal protection issue, we pointed out that a materialman who does no more than manufacture or supply materials does not benefit from the statute. The statute, however, applies to "any person performing or furnishing the construction or the design . . . of construction". The complaint alleges that PPG "designed glass products for use" at the terminal building. To the extent that PPG is sued as manufacturer or seller of the glass, PPG is not covered by the statute and the summary judgment in favor of PPG as to these claims was error. To the extent that PPG is sued as the designer or installer of the glass, PPG is covered by the statute and the summary judgment in its favor was correct.

PPG objects to an analysis of its activities, asserting that it has the protection of the statute because it was a member of the "construction team". This approach disregards the statutory language. The benefits of § 23–1–26, supra, apply to "any person performing or furnishing the construction or the design, planning, supervision, inspection or administration of construction . . and *on account of such activity* . . . ." (Our emphasis.) The statutory language requires an activity analysis.

4. In paragraph numbered 3 of this issue, we pointed out that warranties are covered by § 23–1–26, supra, unless the warranty contains "express terms" inconsistent with the statute. We also pointed out that there has been no showing, on appeal, that the warranties alleged contained any express terms inconsistent with the statute. Plaintiff contends that summary judgment was improper as to any warranties allegedly made by Universal, Burk or PPG because these defendants "did not address themselves ·to these facts and did not sustain their burden of proof in the Summary Judgment proceeding." We do not know what contentions were raised in the trial court; there is no transcript of the proceedings at the motion hearing. Questions for review are established only by the record; it is the duty of a litigant seeking review to see that a record is properly prepared. *Westland Development Co. v. Saavedra,* 80 N.M. 615, 459 P.2d 141 (1969). The summary judgment states that the motions for summary judgment were heard, that there were no genuine issues of material fact as to the counts where the warranties were pleaded. From the record we cannot say that the warranty claims were not presented to the trial court.

5. Universal cross-claimed against PPG, alleging an express contract of indemnification in which PPG agreed to hold Universal harmless from all claims resulting directly or indirectly from the performance of PPG's subcontract. PPG contends on appeal that § 23–1–26, supra, applies to Universal's indemnification claim. Universal moved to strike this portion of PPG's brief, contending that Universal's cross-claim against PPG was not considered by the trial court at the time of the summary judgment hearing. This is incorrect; Count II of this cross-claim was expressly ruled on in the summary judgment. The record is not clear whether Count I (the indemnification claim) was considered at the summary judgment hearing.

We grant Universal's motion to strike, not on the basis that the indemnity claim was not before the trial court, but on the basis that it is not an issue in any of the interlocutory appeals. Rule 6(b)(2) of the Rules of Appellate Procedure for Civil Cases requires the application for appeal to state the questions presented. The three parties applying for an interlocutory appeal were plaintiff, Albuquerque and Universal. None of the applications raised the indemnity issue. PPG did not seek an interlocu-

tory appeal. Universal's motion to strike is granted. In turn, PPG's motion to strike Universal's reply brief, filed contrary to this Court's order 'granting Universal's interlocutory appeal, is also granted.

Having affirmed the summary judgment in part and having reversed the summary judgment in part, the cause is remanded for entry of an amended summary judgment consistent with the views expressed herein. Plaintiff is to recover one-half of his appellate costs from PPG; other parties are to bear their own appellate costs, if any.

IT IS SO ORDERED.

HENDLEY, J., concurs.

SUTIN, J., dissenting.

SUTIN, Judge (dissenting).

I dissent.

"It is true that the presumption of law is that the majority of the court are right and that I am wrong; yet, in the face of this presumption, and the positiveness with which the views of the majority are asserted, I cannot yield my convictions the other way [convictions which I submitted to my brethren], [convictions] which were never clearer or stronger in any case." *O'Neil v. Vermont*, 144 U.S. 323, 353, 12 S.Ct. 693, 704, 36 L.Ed. 450 (1892) (Justice Field, dissenting).

The bench and the bar have commented favorably and adversely on the role of the dissenting opinion. In this case, and in some prior thereto, my authorship of an opinion finds disfavor with my brethren, and my formal opinion becomes a dissent. The reasons should be made known to the bench, the bar and the public. The past experiences of judges as lawyers in the courtroom and on appeal, the past human and legal relationship in society, the development subconsciously of ideas of "equity," "fair play" and "morality" create differences of opinion on the juridical concepts of justice in the administration of the law. I am not a humorless self-righteous sort of judge who has a firm conviction that always I alone, of the regiment of this Court, is in step. But we must not surrender our honest convictions solely because of the opinions of our brethren. The Supreme Court of the United States is the exemplar of this truism.

When the legislature enacts an odd statute, many courts and lawyers are disposed to construe such legislation in the light of preconceived ideas. They often do this without being aware of it because it is natural for us to be prejudiced in favor of those things with which we are familiar. It is difficult to break away from preconceived ideas. However, when the legislature departs from the past, such as a departure from the statute of limitations, it is the duty of courts to lay aside their preconceived ideas and construe such legislation according to its spirit and reason, and the evil aimed at in its enactment. Ofttimes, with the aid of satisfying words and phrases, to express our ideas, we give ourselves the illusion of possession the ultra-mundane ability to decide constitutional questions. We perceive with an optical illusion instead of with the retina.

In anticipation of a petition for certiorari being filed, I want to lay my cards on the table so that the Supreme Court can decide which opinion holds the royal flush.

The evil at which § 23–1–26 was aimed and the reason given for its enactment are the potential liability of the architectural profession and construction industry. The spirit in which it was first enacted in 1967, generally in the United States and in New Mexico, resulted from pressures brought to bear upon state legislatures by architects and construction industry. Cotter, Comment/Limitation of Action Statutes for Architects and Builders-Blue Prints for Non-Action, 18 Catholic U. of Amer.L.Rev. 361 (1967). I see no evil and denigrate the spirit and the reason for which this Act was passed. My brethren feel otherwise.

Plaintiff and the City attack the statute on three constitutional grounds: (1) Article IV, Section 24 of the New Mexico Constitution, which prohibits local or special laws; (2) Article II, Section 18 of the New Mexico Constitution and United States Constitution Amendment XIV, the Equal Protection

Clause; (3) Article IV, Section 16, subject in title of the Act. This constitutional question is a matter of first impression.

Section 23–1–26, *enacted in 1967,* reads:

*No action to recover damages for any injury to property, real or personal, or for injury to the person, or for bodily injury or wrongful death,* arising out of the defective or unsafe condition of a physical improvement to real property, nor any action for contribution or indemnity for damages so sustained, *against any person performing or furnishing the construction or the design, planning, supervision, inspection or administration of construction of such improvement to real property, and on account of such activity, shall be brought after ten [10] years from the date of substantial completion of such improvement;* provided this limitation shall not apply to any action based on a contract, warranty or guarantee which contains express terms inconsistent herewith. The date of substantial completion shall mean the date when construction is sufficiently completed *so that the owner can occupy or use the improvement for the purpose for which it was intended,* or the date on which the owner does so occupy or use the improvement, or the date established by the contractor as the date of substantial completion, whichever date occurs last. [Emphasis added.]

For purposes of convenience, I shall deem this statute to mean "any person" involved in a "construction project." *This statute covers every construction project in the past history of New Mexico.*

"No action to recover damages . . . shall be brought" is a limitation not only on the remedy, but also on the right to institute an action. *Wall v. Gillett,* 61 N.M. 256, 298 P.2d 939 (1956). Section 23–1–26 proceeds beyond this concept. It prevents a cause of action from ever arising. An injured party literally has no cause of action, *even though it takes two to make a tort.* It abrogates a remedy for a very real wrong, even though a plaintiff normally has a claim for relief. It abolishes what is termed "a cause of action" or "a claim for relief." Section 23–1–26 falls within the perimeter of confused and disordered tort concepts.

Before discussing the constitutionality of § 23–1–26, it is important to establish the following propositions (A) and (B).

A. *Section 23–1–26 is not a statute of limitations.*

Chitty, J., said in *Lavery v. Pursell,* 39 Ch.D. 508, 517 (1888):

Courts of justice ought not to be puzzled by such old scholastic questions as to when a horse's tail begins and where it ceases. You are obliged to say, "This is a horse's tail" at some time.

I say: "This is the horse's tail." Section 23–1–26 is not a statute of limitations.

Seventy-five years ago, *Wilson v. Iseminger,* 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902) said:

It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; *if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions.* [Emphasis added.]

Two years later, *Lamb v. Powder River Live Stock Co.,* 132 F. 434 (8th Cir. 1904), said:

It is sufficient to say that all of the cases recognize the true rule to be that a limitation is unreasonable which does not, before the bar takes effect, afford full opportunity for resort to the courts for the enforcement of the rights upon which the limitation is intended to operate, and that this opportunity must be afforded in respect of existing rights of action after they come within the present or prospective operation of the statute and in respect of prospective rights after they accrue. [132 F. at 442.]

\* \* \* \* \* \*

*Nothing could be more unreasonable or more certainly violative of constitutional prohibitions than to bar rights of action because of the lapse of time prior to their accrual, when they could not have been exercised.* [132 F. at 443.] [Emphasis added.]

A statute like 23–1–26 also "operates as a grant of immunity because its effect is to prohibit the injured person from recovering no matter how diligent he was in pressing his claim." *Bagby Elevator and Electric Company, Inc. v. McBride,* 292 Ala. 191, 291 So.2d 306, 311 (1974).

Section 23–1–26 is not a statute of limitations. It is "an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions." *Wilson v. Iseminger,* supra.

It has been said that § 23–1–26 "is a special statutory limitation or 'hybrid.' On the one hand, it bars a right of action from coming into existence if the accident occurs subsequent to the ten-year period; but as to those events happening before the statutory period has run, the provision disallows, like any other statute of limitations, the institution of suit after the prescribed ten years has expired." *O'Connor v. Altus,* 67 N.J. 106, 335 A.2d 545, 553 (1975). The purpose of the New Jersey statute, like our § 23–1–26, "is to cut off all claims of the sort referred to in the statute at the end of ten years from completion of the work." *O'Connor,* supra [335 A.2d at 554.]

This "hybrid" statute is a mixture of language that means this: A claim for tort relief that arises prior to the ten-year period must be commenced within the three-year limitation period fixed by statute. Section 23–1–8. If the claim for relief arises after a seven-year period has passed, the action must be commenced within the ten-year period after substantial completion of the work. The three-year period of limitation is shortened. I do not interpret this to mean that § 23–1–26 is a statute of limitations.

On the other hand, a statute of limitations determines whether an existing claim has become a stale claim because a party has slept on his rights. It must afford a person a reasonable time in which to commence the action before the bar takes effect. *Davis v. Savage,* 50 N.M. 30, 168 P.2d 851 (1946). It governs the time within which a legal proceeding must be instituted after the cause of action accrues. This was graphically illustrated by Circuit Judge Frank in a dissenting opinion. In *Dincher v. Marlin Firearms Co.,* 198 F.2d 821, 823 (2d Cir. 1952), he wrote:

Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a nonexistent railroad. *For substantially similar reasons, it has always heretofore been accepted, as a sort of legal "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, i. e., before a judicial remedy is available to the plaintiff.* For a limitations statute, by its inherent nature, bars a cause of action solely because suit was not brought to assert it during a period when the suit, if begun in that period, could have been successfully maintained; the plaintiff, in such a case, loses for the sole reason that he delayed—beyond the time fixed by the statute—commencing his suit which, but for the delay, he would have won. [Emphasis added.]

In New Mexico, since territorial days, the limitation period in every action begins to run after the cause of action accrues, "and not afterwards, *except when otherwise specially provided.*" [Emphasis added.] Section 23–1–1, N.M.S.A. 1953 (Vol. 5). In wrongful death actions, the limitation period is "within three [3] years after the cause of action accrues." Section 22–20–2, N.M.S.A. 1953 (Vol. 5, 1975 Supp.). For personal injury, the accrual limitation period is three years. Section 23–1–8. For property damage, the accrual limitation period is four years, and this limitation period is applicable to "all other actions *not herein otherwise provided for*". [Emphasis added.] Section 23–1–4.

Section 23–1–26, supra, does not specially provide otherwise because it is not a statute of limitations, and it bars any action from ever arising.

### B. *There is a conflict in judicial decisions.*

In 1967, "construction project" statutes began to sweep the country.

Since 1967, a conflagration has arisen among the courts to decide the constitutional issues. None of the courts upholding the statute have considered *Wilson,* supra. An analysis of cases which uphold a statute will show seriatim that (1) different types of statutes were involved; (2) appellate court decisions were not final; (3) constitutional issues were not involved; (4) different constitutional provisions exist; (5) misinterpretations have occurred; and (6) unfortunately, inapplicable cases are cited as authority. For examples seriatim: [5]

(1) *Josephs v. Burns,* 260 Or. 493, 491 P.2d 203 (1971). Oregon enacted a *general* statute in 1967. It reads:

> In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of.

The court held this statute valid based upon a quotation from *Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). *Silver* involved the validity of the New Jersey "guest" statute. The court said by way of dictum:

> We need not, therefore, elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, *to attain a permissible legislative object.* [Emphasis added.] [280 U.S. at 122, 50 S.Ct. at 58.]

A review of *Silver* and the cases cited therein do not disclose "a permissible legislative object" that abolishes "a tort claim for relief" to which a party is entitled. To deny a party the right to seek relief in court, public policy must justify the enactment of the statute. "Public policy" imports something that is uncertain and fluctuating, varying with changing economic needs, social customs, and moral aspirations of the people. A state has no public policy, properly cognizable by the courts, which is not derived by clear implication from the established law of the state, as found in its Constitution, statutes and judicial decisions. *Barwin v. Reidy,* 62 N.M. 183, 307 P.2d 175 (1957). The State of Oregon believed its *general* law to comport with public policy. *Silver* was brushed aside in *McGeehan v. Bunch,* 88 N.M. 308, 540 P.2d 238 (1975).

However, the ten-year statute specific to construction projects was adopted in Oregon in 1971. ORS 12.135. Its constitutionality has not yet been determined. *Mt. Hood Radio & T. Broad. Corp. v. Dresser Indus., Inc.,* 270 Or. 690, 530 P.2d 72 (1974).

(2) *Regents of U. of Calif. v. Hartford Acc. & Indem. Co.,* 59 Cal.App.3d 675, 131 Cal.Rptr. 112 (1976). *In this case "Hearing Granted Sept. 15, 1976."* The California statute does not apply to "injury to the person . . . or wrongful death . . . ." The Supreme Court of California has not yet rendered its decision.

*Freezer Storage, Inc. v. Armstrong Cork Co.,* 234 Pa.Super. 441, 341 A.2d 184 (1975). *In this case "Application for Allocatur Granted Sept. 16, 1975."* The Supreme Court of Pennsylvania has not yet rendered its decision.

(3) *Nevada Lakeshore Co., Inc. v. Diamond Electric, Inc.,* 89 Nev. 293, 511 P.2d 113 (1973); *Grissom v. North American Aviation, Inc.,* 326 F.Supp. 465 (M.D.Fla. 1971). In these cases, no constitutional issue was involved.

(4) In some cases, constitutional provisions in these states on "local or special laws" are distinguishable in some respects from that in New Mexico. Article IV, Section 24 of our Constitution enumerates classes. Arkansas does not: *Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970).

(5) *Yakima Fruit & Cold Stor. Co. v. Central Heat. & P. Co.,* 81 Wash.2d 528, 503 P.2d 108 (1972).

*Yakima Fruit* misinterprets *Skinner v. Anderson,* 38 Ill.2d 455, 231 N.E.2d 588 (1967) which appears to be the first case that declared a statute like § 23–1–26 unconstitutional.

*Yakima Fruit,* in its misinterpretation of *Skinner,* says:

> The case of *Skinner v. Anderson,* 38 Ill.2d 455, 231 N.E.2d 588 (1967), declared the Illinois statute unconstitutional as being special legislation *in favor of only architects and contractors.* The same cannot be said of RCW 4.16.300 et seq. because the scope of the Washington provision is *not limited as to vocation.* The subject statute bars actions against *any person* having constructed, altered or repaired any improvement upon real property. [Emphasis added, except to "any person".] [503 P.2d at 111.]

The Illinois statute, like that in Washington and New Mexico, applies to "any person." *Skinner* said:

> The effect of section 29 of the Limitations Act is to grant to architects and contractors a special or exclusive immunity. [231 N.E.2d at 590.]

(6) *Reeves v. Ille Electric Company,* 551 P.2d 647 (Mont.1976), relied upon by defendants, held the statute *not* applicable to a materialman whose product was incorporated in the construction. In holding the statute unconstitutional, it relied on "other contrary authorities more persuasive and compatible with Montana law." Of the seven cases cited in *Reeves,* four of them are those referenced supra, which were either caught off base or disapproved. A sixth case, a Colorado case, *Housing Authority of Town of Limon v. Leo A. Daly Co.,* 35 Colo.App. 244, 533 P.2d 937 (1975), *did not approach a constitutional question. Its statute is a statute of limitations.*

The seventh case is *Good v. Christensen,* 527 P.2d 223 (Utah 1974). All that the Utah Court said was:

> The plaintiffs also attack the constitutionality of the statute, but the claim is without merit. [527 P.2d at 225.]

This unfortunate continued citation of cases that do not come to grips with the constitutional problem fool some of the courts some of the time, but not all of the courts all of the time.

The examples mentioned are some of the events that create the judicial conflagration in the field of statutes affecting construction projects. If we open the door to construction projects, we create a loophole for the entrance of other special laws affecting the special interests of other entities apart from architects and contractors, such as manufacturers of automobiles, airplanes, railroad cars and other products, legal and medical malpractice, etc.

The reasons for upholding the statute vary. Some courts say that the statute is one of limitation and it prevents stale and fraudulent claims. Some courts say that architects and construction industries, after the specific period has passed, do not preserve their records of services rendered; that witnesses are unavailable, memories have faded, and the defense becomes more difficult. This concept is a matter of speculation. The owner of real property, excluded from the statute, has a much greater difficulty on its defense. The plaintiff has equal or greater problems on burden of proof. The difficulty of a defense must be weighed in the balance against the right of the public to a remedy to protect a right.

I shall now meet the challenge of those jurisdictions which uphold the constitutionality of the construction project statute.

C. *Section 23–1–26 violates Article IV, Section 24, of the New Mexico Constitution on Special Laws.*

Plaintiff and the City contend that § 23–1–26 violates Article IV, Section 24, of the New Mexico Constitution. I agree.

Article IV, Section 24, provides in pertinent part:

> The legislature shall not pass local or *special laws . . . in the following cases: . . . granting to any corporation, association or individual the right to . . . any special or exclusive privilege, immunity or franchise . . . ; the limitation of actions; . . . . In*

*every other case where a general law can be made applicable, no special law shall be enacted.* [Emphasis added.]

This enumeration alone dismisses from consideration every jurisdiction except the States of Illinois and New Jersey. It prohibits any special law that grants exclusive privilege and *immunity* to any person. Illinois held this statute unconstitutional. *Skinner,* supra. New Jersey did not. *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972). *Carter* concedes that the enumeration creates a problem. No court to date denies that § 23–1–26 grants to persons involved in construction projects a special privilege and *immunity* to suit.

A "special law" is one made for individual cases, or for less than a class of persons, or subjects, requiring laws appropriate to peculiar conditions or circumstances. *State v. A.T. & S.F. Ry. Co.,* 20 N.M. 562, 151 P. 305 (1915).

Under § 23–1–26, the "class of persons" means "any person" involved in a construction project. Such person is a "tortfeasor," one who commits or is guilty of a tort, i. e., a legal wrong such as that "arising out of the defective or unsafe condition of a physical improvement to real property," with resultant injury and consequential damage which is cognizable in a court of law.

Limited to this case, " 'A privilege is a particular and peculiar benefit or advantage enjoyed by a person, company or class beyond the common advantage of other citizens.' " *Daigh v. Schaffer,* 23 Cal.App.2d 449, 73 P.2d 927, 930 (1937). "Immunity" simply means immune to, or free of, suit. *Barker v. City of Santa Fe,* 47 N.M. 85, 136 P.2d 480 (1943).

In 1925, the legislature enacted a law relating to insurance. One provision made it "unlawful for any company licensed to transact an insurance business in the state of New Mexico to appoint more than one agent in any city, town or village . . ." In holding this statute unconstitutional, *Franklin Fire Ins. Co. v. Montoya,* 32 N.M. 88, 92, 251 P. 390 (1926) said:

If, by law, those persons entrenched in the business with agency contracts are secured from competition, *they have been granted a special privilege not enjoyed by other citizens not so entrenched.* It may be conceded for the purposes of this case that constitutional provisions intended to preserve the rights of individual citizens may sometimes be forced to yield to the public welfare. *It should first appear, however, that it is the public welfare which is involved, rather than the interests of a favored few.* [Emphasis added.]

Let us apply the definition of "privilege" and "immunity" to the class created by § 23–1–26. The City is involved in the construction project. It contracted out the work. It is clear that the City as a tort-feasor steps into the shoes of defendants upon substantial completion of the work. As a tort-feasor, the City is liable for all torts committed by the defendants "arising out of the defective or unsafe condition of a physical improvement to real property" created by defendants. As a tort-feasor, the City is the same class as defendants; yet, the defendants are granted a privilege and immunity denied to the City. It requires a "verdictator" to say that the defendants have not been granted a privilege and immunity denied "to other citizens so entrenched."

Section 23–1–26 grants to persons such as defendants a privilege and immunity as a peculiar benefit or advantage denied to other persons, i. e., the right to be free of suit after ten years have passed from the completion of any physical improvement of real property. This immunity is not granted to an owner of real property or any person in control of the property, who makes the improvement. Any person, firm or corporation that owns property is in the same class as the architect or contractor, but lack the immunity granted the architect or contractor. The statute not only denies the owner immunity, it also denies the owner the right to contribution or indemnity. In the instant case, the City is confronted with this perplexing problem. Section 23–1–26 does not embrace all and exclude none whose conditions and circumstances render legisla-

tion necessary or appropriate to tort-feasors as a class. The defendants have not convinced me that the public welfare shall yield to the benefit of the defendants. It is a "special law" made "for less than a class of persons."

Article IV, Section 24, also provides that no special law shall be enacted in the following case: "the limitation of actions". Section 23–1–26, if construed as a "special statutory limitation or 'hybrid'", applies only to "any person" involved in a construction project. Along with privilege, immunity, class and subject, discussed above, this provision of the Constitution is offended.

Article IV, Section 24, also provides:

In every other case where a general law can be made applicable, no special law shall be enacted.

"The Legislature is . . . enjoined from passing special laws where a general law can be made applicable." *Scarbrough v. Wooten*, 23 N.M. 616, 620, 170 P. 743, 744 (1918). "Accordingly, when a general law cannot be made applicable, but a law is required, special laws are permissible." *Albuquerque Met. Arroyo Flood Con. A. v. Swinburne*, 74 N.M. 487, 490, 394 P.2d 998, 1000 (1964).

It is obvious that a general law can be made applicable. The State of Oregon enacted a general law set forth, supra, under *Josephs v. Burns*. In its statute, immunity is accorded to every alleged tort-feasor after the passage of ten years.

*Kallas Millwork Corporation v. Square D Co.*, 66 Wis.2d 382, 225 N.W.2d 454 (1975) lays to rest the cases on which defendants rely. The court said with reference to *Rosenberg, Carter* and *Yakima Fruit:*

None of those three cases is persuasive. Each of them recites the truism that the legislature can make reasonable classifications of persons or things and accord different treatment to different classes. *None of these cases, however, justify the special immunity accorded to the protected class but denied to others similarly situated.* The cases relied upon, which fail to find statutes . . . unconstitutional, do not come to grips with the

real problem presented—what factors distinguish the favored class so that it requires or deserves an immunity not accorded others who appear to be similarly situated. [Emphasis added.] [225 N.W.2d at 460.]

I follow *Skinner* and *Kallas Millwork Corporation*. Section 23–1–26 violates Article IV, Section 24, of the New Mexico Constitution.

### D. *Section 23–1–26 violates Article II, Section 18, of the New Mexico Constitution and Amendment XIV of the Constitution of the United States.*

Article II, Section 18, of the New Mexico Constitution reads:

No person shall be deprived of life, liberty or property without due process of law; *nor shall any person be denied the equal protection of the laws.* [Emphasis added.]

Amendment XIV of the Constitution of the United States provides in pertinent part:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; . . . nor deny to any person within its jurisdiction the equal protection of the laws.

The business of engaging in construction projects is one clothed with a public interest. Section 23–1–26 makes no provision which protects the interest of owners of property. No reasonable connection is shown between granting special privileges and immunities to persons involved in construction projects and denying them to citizens who own the real property upon which improvements are made.

Equal protection means that a law enacted by the legislature must be so framed as to embrace equally all who may be in like circumstances and situations. Our duty is to determine whether the purpose behind the legislation is lawful and, if so, whether the legislation tends, in a rational manner, to promote that lawful purpose. *McGeehan v. Bunch,* supra.

The "equal protection" clause is aligned with immunity. The Hawaii statute is far more specific than § 23–1–26. However, *Fujioka v. Kam,* 55 Haw. 7, 514 P.2d 568, 571 (1973) quoted the following from a decision of the Supreme Court of the United States:

"Immunity granted to a class, however limited, having the effect to deprive another class, however limited of a personal or property right, is just as clearly a denial of equal protection of the laws to the latter class as if the immunity were in favor of, or the deprivation of right permitting working against, a larger class."

*Fujioka* followed the language in *Skinner* and held its statute unconstitutional because "the statute calls for arbitrary and capricious discrimination and must therefore be declared an invidious discrimination violative of the equal protection guaranty." *Kallas Millwork Corporation* followed the language in *Fujioka* and *Skinner.*

I say that § 23–1–26 violates Article II, Section 18, of the New Mexico Constitution and Amendment XIV of the United States Constitution.

E. *Section 23–1–26 violates Article IV, Section 16, of the New Mexico Constitution on the title of the Act.*

Article IV, Section 16, of the New Mexico Constitution, provides in pertinent part:

The subject of every bill shall be clearly expressed in its title . . . .

The title of Laws of 1967, ch. 193, p. 1125, reads:

AN ACT RELATING TO CONSTRUCTION PROJECTS; AND PROVIDING FOR A LIMITATION ON ACTIONS FOR DEFECTIVE OR UNSAFE CONDITIONS ON CONSTRUCTION PROJECTS.

"In our opinion, the true test of the validity of a statute under this constitutional provision is: Does the title fairly give such reasonable notice of the subject matter of the statute itself as to prevent the mischief intended to be guarded against? If so, the act should be sustained." *State v. Ingalls,* 18 N.M. 211, 219, 135 P. 1177, 1178 (1913). This has been the rule for sixty-four years. *Martinez v. Jaramillo,* 86 N.M. 506, 525 P.2d 866 (1974). *Martinez* says:

The mischief to be prevented was hodgepodge or log-rolling legislation, surprise or fraud on the legislature, or not fairly apprising the people of the subjects of legislation so that they would have no opportunity to be heard on the subject. [86 N.M. at 508, 525 P.2d at 868.]

The words in the title "PROVIDING FOR A LIMITATION ON ACTIONS FOR DEFECTIVE OR UNSAFE CONDITIONS ON CONSTRUCTION PROJECTS" falls far short of advising the members of the legislature or the people that § 23–1–26 is not a statute of limitations; that it bars a cause of action before it arises; that it bars a right of action from coming into existence if the accident occurs subsequent to the ten-year period. This language would lead members of the legislature and the people to believe that this Act would fall within the "Limitation on time of bringing actions", § 23–1–1, et seq.

This Act was passed ten years ago. I do not know what pressure, if any, was brought to bear upon the legislature by the architectural profession and construction industries. But I do believe that the title of the Act, which must *clearly* express the subject, may have misled the members of the legislature who enacted the law and the governor who signed it.

Section 23–1–26 violated Article IV, Section 16 of the New Mexico Constitution.

F. *Miscellaneous Matters.*

The majority opinion, under the classification of Application of the Statute, pp. 221–224, has come to conclusions, some of which I do not understand, and some of which are not clear to me. To keep the record straight, I present these matters now as I presented them to my brethren.

(1) *Universal Constructors' cross-appeal is without merit.*

Universal Constructors cross-appealed from that portion of the judgment of the

district court which denied Universal Constructors' motion for summary judgment on plaintiff's claims of negligent maintenance and negligent failure to warn.

The claim of Universal Constructors is that plaintiff's complaint falls within the proscriptions of § 23–1–26. Having declared this statute unconstitutional, Universal Constructors' cross-appeal is without merit.

### (2) *Motions filed on this appeal should be sustained.*

After the appeal was perfected and briefs filed, the following events occurred.

On February 25, 1977, Universal Constructors filed a motion to strike portions of briefs filed by PPG and plaintiff, or in the alternative for permission to file a reply brief. The parties were granted through March 7, 1977 to respond to the motion. On March 8, 1977, the responses having been filed, we held that the motion to strike would be considered at the same time the case was considered on the merits.

On March 15, 1977, this Court received a communication from Universal Constructors that "In the absence of any mention of a denial of the right to submit a reply brief, Universal is now preparing a reply brief, soon to be submitted to the Court . . ." On March 28, 1977, Universal filed a reply brief. On April 4, 1977, PPG filed a motion to strike the reply brief. On April 6, 1977, this motion to strike was deferred pending a decision on the merits.

We now turn to Universal Constructors' motion to strike portions of briefs filed by plaintiff and PPG. The first portion deals with plaintiff's argument that the statute is unconstitutional on the grounds that the title of the statute does not clearly express the subject of the Act. On this matter, the motion to strike should be overruled.

The second portion deals with the applicability of § 23–1–26 to Universal Constructors' claim for contractual indemnity.

On *November 8, 1976,* Universal Constructors filed a cross claim against PPG in two counts. One was based upon a subcontract between Universal Constructors and PPG, and the other on strict liability.

On *October 29, 1976,* ten days *before* the cross claims were filed, PPG moved for summary judgment on these cross claims.

I can find no determination in the trial court of PPG's motion for summary judgment on these cross claims. Nevertheless, PPG, in Point III of its answer brief, asserts that § 23–1–26 applies to actions of indemnity and contribution asserted against PPG by Universal Constructors. Universal Constructors moved to strike this portion of PPG's answer brief. Universal Constructors' motion to strike is sustained.

PPG sought to use a pole vault to jump over issues not decided in the trial court. In this case, the pole broke and the vault failed. This civil war should be returned to the district court. Any relief PPG seeks on its motion for summary judgment must be sought in the trial court.

PPG's motion to strike Universal Constructors' reply brief, except as to matters pertinent to plaintiff's brief-in-chief, should be sustained.

### G. *Conclusion.*

The summary judgments granted Universal Constructors, PPG and Burk against plaintiff, Counts I–VI of plaintiff's complaint having been dismissed with prejudice, and all cross claims having been dismissed with prejudice, should be reversed. The judgment in favor of plaintiff on portions of Count I should be affirmed.

The trial court has the right to re-reconsider all motions for summary judgment on the complaint and cross claims, so long as motions are grounded on reasons other than § 23–1–26, the statute of repose. On Universal Constructors' cross claim for indemnity, see § 28–2–1, N.M.S.A. 1953 (Vol. 5, 1975 Supp.).